IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ANDREW DUNLEVY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-3093 |
| | ) | |
| JAMES O. LANGFELDER, | ) | |
| DOUG BROWN, JOHN DAVIS, | ) | |
| and CITY OF SPRINGFIELD, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

This cause is before the Court on the Motion for Summary Judgment (d/e 23) filed by Defendants James O. Langfelder, Doug Brown, John Davis, and the City of Springfield. For the reasons that follow, the Motion is GRANTED.

### I. INTRODUCTION

On May 20, 2019, Plaintiff Andrew Dunlevy filed a three-count Amended Complaint (d/e 11) against Mayor James O. Langfelder and two City Water Light and Power ("CWLP") employees, Doug Brown and John Davis, and the City of Springfield. Count I alleges that Mayor Langfelder, Brown, and Davis violated Dunlevy's equal

protection rights under the Fourteenth Amendment by terminating Dunlevy based on his race.  Dunlevy is white.  Count II alleges that the City of Springfield violated Dunlevy's rights under the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.*  Count III alleges that the City of Springfield discriminated against Dunlevy on the basis of his race when Dunlevy was terminated from his employment in violation of Title VII of the Civil Rights Act.

On October 31, 2020, Defendants filed a motion for summary judgment arguing that no other employee was similarly situated to Dunlevy and, therefore, Dunlevy's rights were not violated. Motion, d/e 23.  Dunlevy filed a response, to which Defendants filed a reply. Response, d/e 24; Reply, d/e 25.

## II. FACTS

The Court draws the following facts from the parties' statements of undisputed facts and from the evidence submitted by the parties.  Any facts not disputed or disputed without evidentiary documentation of the basis for the dispute have been deemed admitted.  See CDIL-LR 7.1(D)(2)(b)(2).

Dunlevy, a white individual, was employed at CWLP, which is a public utility owned by the City of Springfield.  Defendant's

Statement of Facts, d/e 23, p. 3; Plaintiff's Additional Statement of Facts, d/e 24, p. 12.  Dunlevy was employed as a meter reader. D/e 24, p. 12.  His supervisor was John Friedmeyer, the maintenance supervisor. D/e 23, p. 4.   Friedmeyer was supervised by Don Ott, the superintendent of distribution and general services. Id.  Ott was supervised by Greg Yakle, the director of transmission and distribution.  Id.  Yakle was supervised by John Davis, the electric division manager.  Id.  Davis was supervised by Doug Brown, the chief utility engineer, and Brown reported to the Mayor of Springfield, James Langfelder.  Id.  Mayor Langfelder is the appointing authority for the City of Springfield so he has the final authority for the hiring and firing of the employees at CWLP.  D/e 23-7, pp. 16-17.  As of September 2020, CWLP had 531 employees and the City had a total of 1,450 employees.  D/e 23, p. 7.

On September 18, 2017, Mayor Langfelder extended a job offer to Tour Murray as a meter reader, and his first day of employment was September 25, 2017.  D/e 24, p. 12-13.  Murray is African American. D/e 23, p. 5.  On September 25, 2017, Mayor Langfelder extended a job offer to Dunlevy, and his first day of employment was October 23, 2017.  D/e 24, p. 13.  Both individuals were

notified that the position was subject to a 12-month probationary term. D/e 23, pp. 3, 5.

Ott directed an investigation of several utility accounts on Dunlevy's reading route. D/e 23, p. 4. Based on that investigation, Ott authored a memorandum dated August 20, 2018 that recommended Dunlevy's discharge during the course of Dunlevy's probationary period. D/e 24, p. 14. The memorandum alleged that Dunlevy entered inaccurate readings on several addresses on his route. D/e 23, p. 4. Ott concluded that Dunlevy was falsifying his meter reads and not conducting actual reads of the meters. D/e 23-9, p. 1; d/e 23, p. 4. Ott concluded in his memorandum:

> Mr. Dunlevy is a probationary employee, and this behavior is only going to get worse with more time. These are accounts I could find, I'm sure there are countless examples that have gone unnoticed. In the case of Maggie [D]rive[,] the customer felt he was ok watering his yard due to the actual reads by Dunlevy. Now this customer is required to pay CWLP for $500.00 of water usage in a single bill. Based on the above[,] I recommend releasing Mr. Dunlevy from employment.

D/e 23-9, p. 2.

After reviewing and discussing the memorandum, Ott, Friedmeyer and/or Yakle, Human Resources Director Jim Kuizin, Davis, and Brown agreed to recommend to Mayor Langfelder the

termination of Dunlevy.  D/e 23, p. 5.  The Human Resources Department prepared termination paperwork, which was submitted along with the memorandum to the Mayor's office for a final decision.  Id.  Defendants contend that Mayor Langfelder read the memorandum, which Dunlevy disputes.  Mayor Langfelder testified that he is not aware that he reviewed the memorandum.  D/e 23-7, p. 17.  Mayor Langfelder also testified that he does not recall any details as to why Dunlevy was terminated, but Mayor Langfelder acknowledged that he is responsible for all hiring and firing.  Id. at 16-17.  Dunlevy was terminated by Mayor Langfelder.  D/e 23, p. 5.

Dunlevy did not receive any warnings that his performance was inadequate prior to notification of his termination. D/e 24, p. 15.  Ott did not question Dunlevy or seek an explanation from Dunlevy.  D/e 24, p. 15.  Dunlevy disputed that he was curbing meters[1].  D/e 24, p. 15.  Dunlevy's termination was signed off by superiors on August 20, 2018.  D/e 24, p. 15. Mayor Langfelder

---

[1] Falsifying meter reads without conducting actual reads is referred to as "curbing meters," which describes the practice of entering meter "readings" without reading the meter.  D/e 23, p. 5.

signed off on Dunlevy's termination on September 24, 2018.  D/e 24, p. 19.

In 2018, Ott learned of concerns regarding Murray so Ott conducted an investigation into the allegations.  D/e 24, p. 15. Ott learned that Murray was a convicted felon.  Id. at 16.  Additionally, Murray was deviating from his route and taking breaks longer than acceptable.  D/e 25, p. 2; d/e 23-2, pp. 29-30.  Ott was also told that Murray brought a gun to the workplace, but such claim was unsubstantiated and was not reported to Mayor Langfelder.  D/e 24, p. 15; d/e 25, p. 3.  Murray also denied on his employment application that he was convicted of a crime.  D/e 24, p/ 16.  Defendants dispute that Murray materially lied on his employment application, stating that the form in question is not used for criminal background checks and the background check only goes back 7 years.  D/e 25, p. 3.  Major Langfelder was never informed of Murray bringing a gun to work.  D/e 25, p. 3.  On August 23, 2018, a memorandum written by Greg Yakle to John Davis stated two reasons recommending Murray be terminated: (1) "In August of 2010[,] Mr. Murray was charged with Residential Burglary, Theft, and Criminal Damage to Property.  Ultimately[,] Mr. Murray pleaded

guilty to Burglary in that case" and (2) "supervision has found incidents where there have been large gaps in [Murray's] daily work." D/e 23-10, pp. 1-2. The memorandum did not say that Murray lied on his employment application. Id. Yakle recommended releasing Murray from employment while Murray was still a probationary employee. Id. Mayor Langfelder decided to extend Murray's probationary period instead of termination. D/e 23, p. 6.

Mayor Langfelder was concerned about minority hiring numbers and had a goal of increasing minority employment at the City. D/e 24, p. 18. The City maintains an affirmative action plan intended to promote a diverse workforce. Id.

Mayor Langfelder testified that he considered falsifying meter readings more serious than "goofing off" while working. D/e 23-7, p. 62. He also testified that the conduct described in the memorandum relating to Murray, specifically the "lack of diligence on the job while on the clock," is not a dischargeable offense on first notice. Id. at 33-34. Mayor Langfelder believed Murray's job performance could be corrected with training. Id. at 30. Moreover, Mayor Langfelder testified that Murray's job performance was not

affected by Murray's burglary conviction.  Id. at 34.  The complaint from Yakle was that Mayor Langfelder and others did not know about the conviction until after hiring.  Id.  Mayor Langfelder testified that lying on a hiring application is a terminable offense.  Id. at 28.

Mayor Langfelder did not recall ever meeting Dunlevy or Murray.  D/e 23, p. 6. Dunlevy testified in his deposition that he is not aware of direct evidence of race playing a part in his termination or the decision not to terminate Murray.  Id.

### III. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The movant bears the initial responsibility of informing the Court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of any genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the nonmoving party.  Carroll v. Lynch, 698 F.3d 561, 564 (7th Cir. 2012).  When ruling on a motion for

summary judgment, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Woodruff v. Mason, 542 F.3d 545, 550 (7th Cir. 2008).

## IV. ANALYSIS

**A. Defendants Brown and Davis Are Entitled to Summary Judgment.**

Dunlevy agrees that Defendants Doug Brown and John Davis did not discriminate against Dunlevy and that Defendants Brown and Davis are not proper defendants. D/e 24, p. 23. Because Dunlevy admits that Defendants Brown and Davis did not discriminate against Dunlevy, Defendants Brown and Davis are entitled to summary judgment.

**B. Defendants Mayor Langfelder and the City of Springfield Are Entitled to Summary Judgment Because Murray Was Not Similarly Situated to Dunlevy.**

Dunlevy alleges three separate claims, but all three claims are analyzed the same. See Barnes v. Bd. of Trustees of Univ. of Illinois, 946 F.3d 384, 389 (7th Cir. 2020) ("The legal standard for analyzing racial discrimination claims under Title VII and § 1983 is the same.").

In evaluating a summary judgment motion on an employment discrimination claim, one "common, but not exclusive" approach used by plaintiffs to establish a "triable issue of intentional discrimination" is the burden-shifting approach created by the Supreme Court in <u>McDonnell Douglas Corp v. Green</u>, 411 U.S. 792 (1973). <u>David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508</u>, 846 F.3d 216, 224 (7th Cir. 2017) (quoting <u>Volling v. Kurtz Paramedic Servs., Inc.</u>, 840 F.3d 378, 383 (7th Cir. 2016)). A plaintiff who relies on the <u>McDonnell Douglas</u> framework must first establish a prima facie case of discrimination, at which point the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment decision, at which point the plaintiff must prove that the stated reason is a pretext. <u>Purtue v. Wisconsin Dep't of Corr.</u>, 963 F.3d 598, 601–02 (7th Cir. 2020). The Illinois Supreme Court adopted the <u>McDonnell Douglas</u> framework when handling an Illinois Human Rights Act claim. See <u>Zaderaka v. Illinois Human Rights Com.</u>, 131 Ill.2d 172, 178 (1989). All parties agree that the <u>McDonnell Douglas</u> framework is the proper standard to use in this case.

Here, Dunlevy is alleging disparate discipline when Mayor Langfelder terminated Dunlevy but not Murray.  More specifically, Dunlevy argues that, if he were an African American individual, Dunlevy would not have been terminated.  Dunlevy alleges that he is a member of a protected class, he met his employer's job expectations, he suffered an adverse employment action – being terminated, and a similarly situated employee outside of the protected class – Murray – was treated more favorably.  Defendants argue that Dunlevy and Murray were not similarly situated, and, therefore, Dunlevy's prima facie case fails.

Two people are similarly situated when the individuals "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Gates v. Caterpillar, Inc., 513 F.3d 680, 690 (7th Cir. 2008) (internal quotations omitted).  "Similarly situated employees must be directly comparable to the plaintiff in all material respects, but they need not be identical in every conceivable way." Coleman v. Donahoe, 667 F.3d 835, 846 (7th Cir. 2012).  "We are looking for comparators, not "clone[s]." Id. (quoting

Chaney v. Plainfield Healthcare Center, 612 F.3d 908, 916 (7th Cir.2010)).

The question of whether individuals are similarly situated is typically a question of fact. Coleman, 667 F.3d at 846. "[S]ummary judgment is appropriate only when no reasonable fact-finder could find that plaintiffs have met their burden on the issue." Id. at 846-47. "There must be "enough common factors to allow for a meaningful comparison in order to divine whether intentional discrimination was at play." Id. at 847.

Here, Dunlevy and Murray had the same supervisor and were held to the same employment standards. At issue is whether they engaged in "similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Gates, 513 F.3d at 690.

Dunlevy argues that his conduct was the same or less serious than the conduct of Murray. To Dunlevy, curbing meters is like lying and Murray lied about his prior conviction. Mayor Langfelder testified that Murray's burglary conviction was an issue prior to his employment and one that did not affect his currently job performance. Dunlevy's main job responsibility was reading meters

and recording that information, which was used to charge CWLP customers. After an investigation, Ott found that Dunlevy was falsifying meter reads and not conducting actual reads of the meters. On one occasion, Dunlevy's false meter reading resulted in an additional charge to a customer of $500 after the reading was corrected. Dunlevy's false readings directly affected CWLP's income and the cost to CWLP's customers. As for Murray, Murray lied about an event that occurred prior to his employment, which was not related to the actual performance of his job.

Dunlevy also argues that Murray was gone for hours at a time at work. Mayor Langfelder testified that he considered Dunlevy's conduct more serious than Murray's goofing off and determined that Murray's conduct could be corrected by training. In Mayor Langfelder's opinion, Murray's lack of diligence on the job while on the clock is not a dischargeable offense on first notice. However, Dunlevy's conduct of falsifying meter readings warrants discharge regardless of an employee's probationary status.

The Court finds that Dunlevy and Murray were not similarly situated employees. The conduct of the two are not comparable in seriousness, and no reasonable jury could find otherwise. Dunlevy

was falsifying the meter reads, which was his main job responsibility, that had monetary consequences to both CWLP and its customers. On the other hand, Murray lied about a previous conviction and was slacking on the job. Murray's conduct is materially different.

In Coleman, the Seventh Circuit held that the plaintiff and two co-workers violated the same rule that prohibits violent and/or threatening behavior when the two individuals threated another employee with a knife and the plaintiff made an indirect threat to a different co-worker. Coleman, 667 F.3d at 851. In Humphries v. CBOCS West, Inc., 474 F.3d 387 (7th Cir. 2007), the plaintiff and the comparator both left the safe unlocked, which was the basis for the plaintiff being fired. 474 F.3d at 406. Even though written policies are not at issue, the conduct of Dunlevy and Murray are not of the same quality as was found in Coleman and Humphries.

Because Dunlevy cannot establish a prima facie case, the burden does not shift to Defendants to articulate a legitimate explanation for their actions. Therefore, the Court does not address whether Defendants have offered a legitimate explanation for Dunlevy's termination.

## VI. CONCLUSION

For the reasons stated above, Defendants Mayor Langfelder and the City of Springfield are entitled to summary judgment. The Court hereby GRANTS defendants' motion for Summary Judgment (d/e 23).

**IT IS THEREFORE ORDERED THAT:**

1. Defendants' Motion for Summary Judgment (d/e 23) is GRANTED.

2. The Clerk is DIRECTED to enter final judgment in favor of Defendants James O. Langfelder, Doug Brown, John Davis, and the City of Springfield.

3. Any pending motions are DENIED as MOOT, any pending deadlines are TERMINATED, and any scheduled settings are VACATED. This case is CLOSED.

**ENTERED: October 28, 2021**
**FOR THE COURT:**

*s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**